## GARFF v. SMITH.

No. 1741. Decided August 21, 1906 (86 Pac. 772).

ANIMALS—HEALTH REGULATIONS—OFFICERS—OFFICIAL ACTS—PERSONAL LIABILITY. Laws 1903, p. 37, c. 42, section 10, provides that when sheep are found diseased, regulation for their quarantine must be made at once by the state sheep inspector or one of his deputies, who must define the place and limits within which such sheep may be grazed, herded, or driven, and such sheep must be held in quarantine until pronounced cured from disease by the state sheep inspector or one of his deputies. Held, that the act of inspecting and quarantining sheep and the selection of the place and limits of quarantine by a deputy inspector are quasi judicial duties, so that he is not liable in a civil action for damages resulting therefrom, in the absence of averment and proof that he acted with malice or through fraud or corruption.

APPEAL from District Court, Tooele County; C. W. Morse, Judge.

Action by Peter N. Garff against Jesse M. Smith and others. From a judgment in favor of plaintiff against defendant James P. Sharp, he appeals.

REVERSED.

*M. A. Breeden* and *Street & Bramel* for appellant.

*Frick, Edwards & Smith* for respondent.

### APPELLANT'S POINTS.

Sheep inspection and quarantine are clearly within the police powers of the state and summary remedies in that behalf are valid. (*Rasmussen v. Idaho,* 181 U. S. 198.)

"A public officer is not liable to an action if he falls into error where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion—even although an individual may suffer by his mistake. A contrary principle would be pregnant with the greatest mischiefs." (*Kendall v. Stokes,* 3 Howard 87; *Wilkes v. Dinsman,* 7 Howard 89; *Bailey v. Berkey,* 81 Fed. 737; *Crowell v. McFadden,* 8. Cranch 94; *Spalding v. Vilas,* 161 U. S. 483; *Otis v. Watkins,* 9 Cranch 339; *Downer v. Lent,* 6 Cal. 94; *Porter v. Haight,* 45 Calif. 631; *Ballerino v. Mason,* 83 Calif. 447; *Tarpon v. Booth,* 56 Calif. 65; 23 Am. & Eng. Ency Law, pp. 375, 377; Throop, Public Officers, secs. 713, 715; Mechem, Public Officers, secs. 639, 640; *Schooler v. Arrington,* 81 S. W. 468; *Palowski v. Jenks,* 73 N. W. 238; *Lecourt v. Glaster,* 23 So. 463; *Amperse v. Winslow,* 42 N. W. 823; *Gould v. Hammond,* 10 Fed. Cas. 874; *Seaman v. Potten,* 2 Caines [N. Y.] 312; *Raymond v. Fish* [Conn.], 50 Am. Rep. 3; 23 Am. & Eng. Ency. Law (2 Ed.], pp. 375, 377.)

"But to render . . . an officer acting in a capacity in its nature judicial, liable, it must be shown that his decisions were not merely erroneous, but that he acted from a spirit of willfulness, corruption and malice; in other words, that his

action was knowingly wrongful, and not according to his honest convictions in respect of his duty." (*Pike v. Megoun,* 44 Mo. 491; *Tiedt v. Carstemen,* 64 Iowa 131, 19 N. W. 885; *State v. Thomas,* 88 Tenn. 491; *Porter v. Haight,* 45 Cal. 631; *Ballerino v. Mason,* 83 Cal. 447; *Schooler v. Arlington,* 81 S. W. 468; *Chamberlain v. Clayton,* 9 N. W. 237, 56 Iowa 331, 41 Am. Rep. 101.)

RESPONDENT'S POINTS.

"Where a power rests in judgment or discretion so that it is of a judicial nature or character, but does not involve the exercise of the functions of a judge, or is conferred upon an officer other than a judicial officer, the expression used is generally quasi judicial. The officer may not in strictness be a judge, still if his powers are discretionary to be exerted or withheld according to his own view of what is necessary and proper, they are in their nature judicial." (Throop on Public Officers, 533-4; *Bair v. Strock,* 74 Pac. 69. *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65; Mechem on Public Officers, 637; Bishop on Non-Contract Law, 785-6; Throop on Public Officers, 533-4; *State ex rel. v. Meier,* 143 Mo. 440; *Hirks v. Dorn,* 42 N. Y. 47 to 52; *Pennington v. Streight,* 54 Ind. 376; *McCord v. Heigh,* 24 Iowa 342.)

It therefore was the duty of these officers in fixing the limits within which such sheep had to be kept and in determining the place where these limits were fixed to see to it that such sheep could maintain life by obtaining sufficient food and drink within the limits so fixed. (*Aaron v. Broiles,* 64 Tex. 316, 53 Am. Rep. 764; *Beers v. Board of Health,* 35 La. Ann. 1132, 48 Am. Rep. 256.)

STRAUP, J.

The respondent, plaintiff below, brought this action against Jesse M. Smith, the state sheep inspector, James P. Sharp, his deputy, and others, his bondsmen, to recover damages alleged to have been sustained through the negligence of defendants Smith and Sharp in quarantining sheep belonging

to plaintiff and his assignors. As to the defendant Smith and his bondsmen, the court took the case from the jury. Upon the issues submitted the jury rendered a verdict in favor of plaintiff and against defendant Sharp in the sum of $850. From the judgment entered upon the verdict against him, the defendant Sharp appeals.

The complaint, so far as material, alleges that Sharp, by virtue of his office, inspected and quarantined the sheep of plaintiff and his assignors, defined the place and limits of quarantine, and required plaintiff and his assignors to confine and keep the sheep within such limits; that in fixing the place and limits the defendant Sharp was guilty of negligence and acted without due regard for the rights of plaintiff and his assignors in the particular that he selected and designated a place where there was no sufficient or proper food for the sheep, and where there were large quantities of greasewood, which, if eaten by sheep in considerable quantities and by drinking water thereafter, would make them sick and cause them to die; and that, no other food being obtainable, some of plaintiff's sheep ate large quantities of greasewood and drank large and excessive amounts of water, which caused their death. There are no allegations in the complaint, nor is there any evidence showing, that either of the defendants knew, or that it was common knowledge, that it is harmful or injurious to sheep to eat greasewood and to drink water thereafter, nor that the defendants, in the performance of their duty or otherwise, in defining the limits and designating the place, or in any other particular, acted with malice or wantonness, or that they acted beyond the scope of their authority, or without or in excess of their jurisdiction. The evidence shows that plaintiff and his assignors, in the latter part of April, 1903, were driving a herd of about 2,500 head of sheep, some of which were affected with an infectious disease called "scab," from the West, through Tooele county, to Draper, in Salt Lake county, and to Woodland, in Summit county. They stopped in Tooele county several days for shearing, after which they proceeded on their way with the sheep. When about three or four miles from the shearing

camp, or corrals, they were intercepted by defendant Sharp, who inspected the sheep, found them diseased, quarantined them within limits of about four miles square, and directed that they be confined within such limits. The evidence on behalf of plaintiff tends to show that there was no grass or other vegetation within the quarantine limits, except sagebrush, shadscale, greasewood, and, at places, small cedars. The plaintiff and his assignors insisted that they be permitted to proceed, for the reasons, as stated by them to Sharp; that they had ground leased for lambing at Draper and Woodland, and that there was no sufficient food for the sheep at the place of quarantine. Sharp replied that he could not give his consent to permit them to go on, and told them to see Mr. Smith. He went with them to a nearby place to telephone to Smith. Not being able to communicate with him, they went to Salt Lake City. Failing there to see him, they returned to the sheep. With Sharp's permission, the sheep were then taken back to the foothills and without the limits of the quarantine. The sheep were confined in quarantine for a period of only twenty-seven hours. Because of the confinement of the sheep during this period at an improper place, on account of the want of proper food and pasture, the alleged resulting damages are claimed.

From the testimony of witnesses for plaintiff it is claimed that he and his assignors lost about 1,500 head of sheep as a result of the twenty-seven hours of quarantine, because of the sheep eating a large amount of greasewood and drinking water thereafter. But the evidence on behalf of plaintiff also shows that the sheep had passed an unusually hard winter; that a cold snap had set in immediately after shearing; that before the quarantine the sheep had been driven along and kept about places of growing greasewood; that before the quarantine quite a number of sheep had died en route, and about the shearing camp, but, as claimed by plaintiff, from cold and storms; and, while it is testified to that the eating of greasewood and the drinking of water by the sheep caused their death, it is not very satisfactorily made to appear that their death was caused from the eating of greasewood during

the twenty-seven hours as a consequence of the quarantine. The appellant contends (1) that the evidence is insufficient to charge him with negligence; (2) that in inspecting and quarantining the sheep, and in defining the place and limits of quarantine, he, as a public officer in the performance of a public duty, acted in a quasi judicial capacity within the powers and jurisdiction conferred by law, and that, if he can at all be made liable in a civil action, it is necessary to allege and prove that he acted with malice, or through fraud or corruption; and (3) that because of a want of such allegations and proofs the trial court erred in overruling his motion to direct a verdict in his favor and in overruling his motion for a new trial.

In view of the principles of law applicable to this kind of a case it is not necessary to determine whether the evidence is sufficient to show even negligence on the part of the appellant, resulting from his acts, complained of, defining the place and limits of quarantine; the only acts of negligence attempted to be proved and to which the evidence relates. All the authorities agree that a public officer, acting judicially, or in a quasi judicial capacity, cannot be made personally liable in a civil action, unless the act complained of be willful, corrupt, or malicious, or without the jurisdiction of the officer. But, if the duties of the officer are merely ministerial, he is liable in a civil action when, in the performance of them, he acts negligently. These principles of law, of course, are conceded by respondent. It, however, is claimed by him that the appellant, in defining the place and limits the quarantine, acted ministerially, and hence he is liable if he acted negligently. We are of the opinion that the character of the acts performed by appellant are quasi judicial in their nature, and not ministerial. It has well been said that:

"Official duty is ministerial when it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion. Official action is ministerial when it is the result of performing a certain and specific duty arising from fixed and designated facts." (*People v. Bertels et al.*, 138 Ill. 322, 27 N. E. 1091.)

It has also been defined as follows:

"A ministerial act is one which a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed." (*State ex rel. v. Meier,* 143 Mo. 439, 45 S. W. 306.) To the same effect are also the following: *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65; Throop, Pub. Officers, section 535; 23 Am. & Eng. Ency. Law, 376.

The statute (chapter 42, p. 35, Laws 1903) creating the office of state sheep inspector and providing for the control and suppression of scab and other infectious diseases in sheep, provides, among other things, that the state sheep inspector shall have charge of the enforcement of the provisions of the act, and for the appointment of deputies, whose duty it is, among others, to inspect and quarantine sheep within their district. Section 10 (page 37) of the act provides:

"When sheep are found diseased, or have been exposed to disease, by having been corralled, herded, or grazed in the same place with sheep that have been diseased or quarantined, regulations for their quarantine must be made at once by the state sheep inspector or one of his deputies, who must define the place and limits within which such sheep may be grazed, herded, or driven, and such sheep must be held in quarantine until pronounced cured from disease by the state sheep inspector, or one of his deputies. The expense of dipping, hand-dressing, spotting, feeding, and taking care of all sheep quarantined under the provisions of this act, must be paid for by the owner or agent in charge of such sheep."

When sheep are found to be diseased, the statute requires that the state sheep inspector or his deputy shall at once make regulations for their quarantine, and shall define the place and limits within which such sheep must be held until pronounced cured from disease by him or his deputy. The law does not prescribe nor define the time nor mode of the performance of the act with such certainty that nothing remains for judgment or discretion. The kind of regulations to be made, and the defining of the place and limits of quarantine, are wholly left to the judgment and discretion of the officer, to be determined by him, not from fixed and designated facts, but from the facts and circumstances of the particular case.

It is strongly urged by respondent that, while the act of inspecting and quarantining the sheep may be judicial in its nature, nevertheless the act of defining the place and limits of quarantine is but ministerial. We discern no such distinction. The law does not prescribe the mode of doing the one act any more than it does the other. The law requires the officer to make regulations for the quarantine. Defining the place and limits of quarantine is but part of such regulations. The law does not prescribe at what character of place nor within what limits the sheep shall be confined, nor even the kind of regulations that shall be made by the officer. Such determinations involve judgment and discretion, not from fixed and designated, but from varied and multifarious facts. They are dependent upon the number and diseased condition of the sheep, their treatment, care, and preservation, the danger of their contract with and infection of other sheep, the rights of and protection to the public, and a variety of other things, depending upon the exigencies of the case, and, of necessity, must be largely left to the sound discretion of the officer in the exercise of an honest judgment. The law does not prescribe the mode of doing the act with such certainty that one person can do it as well as another by merely following that which is pointed out by the statute. (Mechem, Pub. Officers.) It is quite apparent that the doing of the acts complained of involves such discretionary powers as to make their exercise judicial in their nature, and that the officer performing them is not liable in a civil action, in the absence of averments and proof that he acted with malice or through fraud or corruption. (*Fath v. Koeppel,* 72 Wis. 289, 39 N. W. 539, 7 Am. St. Rep. 867; *Spalding v. Vilas,* 161 U. S. 483, 16 Sup. Ct. 631, 40 L. Ed. 780; *Chamberlain v. Clayton,* 56 Iowa 331, 9 N. W. 237, 41 Am. Rep. 101; *Wall v. Trumbull,* 16 Mich. 234; *Bailey v. Berkey* [C. C.], 81 Fed. 737; *Ballerino v. Mason,* 83 Cal. 447, 23 Pac. 530; *Pike v. Megoun,* 44 Mo. 491; *State v. Thomas,* 88 Tenn. 491, 12 S. W. 1034; *Schooler v. Arrington,* 106 Mo. App. 607, 81 S. W. 468; *State v. Hastings,* 37 Neb. 96, 55 N. W. 774; *Kendall v. Stokes,* 3 How. [U. S.] 87, 11 L. Ed. 506, 833; *Daniels v.*

*Hathaway,* 65 Vt. 247, 26 Atl. 970, 21 L. R. A. 377.) Whether there be such liability against an officer exercising quasi judicial functions, even where he acts maliciously or corruptly, a principle of law concerning which the authorities widely differ, we need not determine in this case.

For the foregoing reasons the judgment of the court below is reversed, the respondent given leave to amend his complaint, and the court directed to grant a new trial. The costs of this appeal to be taxed against respondent.

BARTCH, C. J., and McCARTY, J., concur.