271 P.2d 838

**JENSEN v. TAYLOR.**

No. 8149.

Supreme Court of Utah.

June 11, 1954.

Homer Holmgren and Gayle Dean Hunt, Salt Lake City, for appellant.

John H. Snow, Harold G. Christensen, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal from a judgment for plaintiff entered upon a verdict in his favor for damages sustained when the car in which he was riding as guest was struck by a fire truck being driven by defendant.

The trial court denied a motion for directed verdict, and submitted the case to the jury. Thereafter the court denied defendant's motion for judgment notwithstanding the verdict or for a new trial.

198

Defendant assigns the court's rulings on his motions, as well as instructions given and requested instructions refused, as error.

We are of the opinion that the trial court properly submitted the case to the jury, properly declined to grant judgment notwith 'standing the verdict, and properly denied the motion for a new trial. Nor do we perceive that the court erred in giving the instructions complained of or in failing to instruct as requested by defendant.

These facts are established without convincing conflict: At the intersection of 13th East and 5th South Streets, Salt Lake City, Utah, shortly after midnight on October 21, 1952, a collision occurred between a Chevrolet convertible driven by Seth M. Oberg, Jr., in which plaintiff was riding as a guest, and a Salt Lake City fire truck driven by defendant. The Oberg car was traveling west on 5th South; the fire truck south on 13th East. The Oberg car was struck on the right side just behind the door. The point of impact was slightly north and west of the center of the intersection.

The defendant was responding to an emergency call, and the fire truck was equipped with red lights visible for a distance of 500 feet in front of the truck, and defendant was giving an audible signal by siren at the time of and prior to the collision.

It is not in dispute that Oberg entered the intersection with the green semaphore light in his favor and defendant entered it with the red light against him.

At its intersection with 5th South, 13th East is 55 feet in width from curb to curb, and 5th South where it intersects 13th East is 91 feet in width east of 13th East and 81 feet in width west of 13th East.

■ There is decided conflict in the evidence as to the speed of the two vehicles at and prior to the time each entered the intersection. There is evidence from which the jury might well have found that both defendant and Oberg, with whom plaintiff was riding, were negligent, but not sufficient evidence to establish plaintiff negligent as a matter of law.

There is testimony that the light turned from green to yellow for southbound traffic on 13th East when Oberg was about 100 feet east of the intersection; that Oberg was preparing to stop but when he saw the yellow signal on the side of the semaphore he let his foot off the brake; when about 50 or 75 feet east of the north and south crosswalk the light turned green for Oberg and he proceeded into the intersection.

There is no conflict that when Oberg entered the intersection a car occupied by Frank W. Nielson was stopped at the crosswalk east of 13th East headed west, and a car occupied by Walter Jensen was stopped on the west side of the intersection headed east.

There is testimony that the light turned red against the defendant when he was more than 300 feet north of the intersection; there is testimony that the defendant

did not slow down after the light turned red against him.

Defendant testified that he applied his brakes when he was about 300 feet north of the intersection at which time the red light was against him; thus a jury question was presented as to whether or not he slowed down as was necessary for safe operation.

Defendant further testified that he stepped on the gas when he was about 125 feet north of the east-west crosswalk north of the intersection, and that his speed steadily accelerated until the collision. He further testified that just before he stepped on the gas he could see the car stopped just east of the intersection, but he couldn't see "too far" back of that car because of a "house and some trees" on the corner north of that car. He did not recall having taken a second look to the east after he reached a point 100 to 125 feet north of the point of impact.

When asked why he didn't see the convertible defendant answered that he thought it wasn't there at the time he looked—that it was just as if it dropped out of the sky in front of him. He testified that he could have stopped if he had had to, but when he saw the Jensen car and the Nielson car holding up for him, he released his brake,

The parties disagree as to the interpretation of Section 41–6–14, U.C.A.1953, which provides:

· "(a) The provisions of this act applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by the United States, this state or any county, city, town, district, or any other political subdivision of the state, except as provided in this section and subject to such specific exceptions as are set forth in this act with reference to authorized emergency vehicles.

"(b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(c) The driver of an authorized emergency vehicle may:

"1. Park or stand, irrespective of the provisions of this act;

"2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"3. Exceed the prima facie speed limits so long as he does not endanger life or property;

"4. Disregard regulations governing direction of movement or turning in specified directions.

"(d) The exemptions herein granted to an authorized emergency vehicle shall apply only when the driver of any

said vehicle while in motion sounds audible signal by bell, siren or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

"(e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

"(f) The provisions of this act shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway, but shall apply to such persons and vehicles when traveling to or from such work."

In 1949 the above section was enacted as an amendment to Section 57–7–82, U.C. A.1943. It completely re-wrote the former section, which so far as material reads:

"(b) The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop signs shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal.

"(c) No driver of any authorized emergency vehicle shall assume any special privilege under this act except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law."

Defendant cites and relies on a line of California cases, construing statutes different from ours, which reach a result not possible under our statute, and which in our opinion would do violence to the legislative intent expressed therein. It may well be that the results which defendant contends for would be in the public interest, but that is something which the legislature and not this court must consider.

In the final analysis, defendant contends that *due regard for the safety of others*, required by Section 41–6–14, is satisfied if the driver of an emergency vehicle has given the warning by siren and by light. In fact, the defendant contends that this court should adopt the view expressed by the California court in two cases where it uses the following language:

" * * * The statutes are clear that when an audible signal is given the operator of the emergency vehicle has a clear right of way. The giving

of the signal is the measure of care on his part, and if this is done his duty of care is performed * * *." [1]

" * * * The provisions in sections 120 and 132, supra, to the effect that the exemptions there given shall not relieve the driver of an emergency vehicle of the duty to drive with due regard to the safety of the public, means that the driver must, 'by suitable warning, give others a reasonable opportunity to yield the right of way.' Lucas v. City of Los Angeles [10 Cal. 2d 476], 75 P.2d 599, 603. The sections also provide that the exemption shall not protect the driver from 'an arbitrary exercise' of the privileges there granted. But an arbitrary exercise of said privileges cannot be predicated upon the elements of speed and failure to observe other rules of the road where a warning has been given. 'In such cases speed, right of way, and all other "rules of the road" are out of the picture.' * * *" [2]

The Utah Legislature by its amendment of the Statute in 1949 provided limitations on the exemptions given firemen answering a call by authorizing the emergency vehicle to proceed past a red stop light only when a red light is burning on the vehicle and the siren sounding.

The privilege was further conditioned by allowing such operator to proceed past a red stop light *only after slowing down as may be necessary for safe operation*. (Italics added.)

The above limitation was not contained in the statute before the California court when the two cases just mentioned were decided.

The Legislature likewise added this additional limitation on the exercise of the privilege granted:

"The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

To adopt the view contended for by defendant would ignore completely the specific limitations placed by the Legislature on the driver of an emergency vehicle.

Counsel for plaintiff contend that as the issues were framed in the pleadings and in the pre-trial order, much of the argument in defendant's brief goes beyond the issues; that defendant now contends that he cannot be held liable except for his willful or reckless misconduct, whereas the trial court in its pre-trial order stated the law issue as follows: "Is plaintiff entitled to recover from the defendant by reason of

---

1. Lucas v. City of Los Angeles, 10 Cal. 2d 476, 75 P.2d 599, 604.

2. Raynor v. City of Arcata, 11 Cal.2d 113, 77 P.2d 1054, 1057.

any negligent driving on the part of defendant as contended for by plaintiff?"

In view of the conclusions reached herein we deem it unnecessary to pass on this point raised by plaintiff.

We shall not burden this opinion with a lengthy discussion of the instructions given and of the refusal to give certain requested instructions.

 Defendant predicates error on the failure of the court to instruct the jury that if the collision was due solely to the negligence of the driver of the car in which plaintiff was riding the defendant would not be liable. This request was fully covered in other instructions given. The court instructed the jury as to negligence, proximate cause and contributory negligence.

The court charged the jury that the driver of a fire truck answering an alarm enjoys certain privileges not enjoyed by drivers of ordinary vehicles; that these privileges include the right to proceed past a red light without stopping, but only after slowing down as much as may be necessary for safe operation of the fire truck. The court instructed the jury to determine if defendant used his privilege properly, by reducing his speed as much as may have been necessary for safe operation of the fire truck, and by driving with due regard for the safety of all persons.

3. Folkman v. Jensen, Utah, 218 P.2d 682; Earle v. Salt Lake & Utah R. Corp., 109 Utah 111, 165 P.2d 877.

We do not perceive wherein the court failed to properly instruct the jury; nor do we find evidence sufficient to require the court to hold plaintiff guilty of negligence as a matter of law.[3] The trial court properly submitted to the jury the questions of negligence, contributory negligence and proximate cause, which this court has held are ordinarily jury questions.[4]

Judgment of the trial court affirmed. Costs to respondent.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ.

4. Hayden v. Cederlund, 1 Utah 2d 171, 263 P.2d 796; Gibbs v. Blue Cab, Utah, 249 P.2d 213, on rehearing, Utah, 259 P. 2d 294, and cases therein cited.