Mary DAY, individually, and as sole surviving heir to Boyd K. Day, deceased, Plaintiff and Appellant,

v.

STATE of Utah, By and Through the UTAH DEPARTMENT OF PUBLIC SAFETY; Utah Highway Patrol; Ken Colyar; Salem City Corporation, a municipal corporation of the State of Utah; Brad James; Spanish Fork City Corporation, a municipal corporation of the State of Utah; Ed Asay; and Public Entities 1–3; and John Does 1–8, Defendants and Appellees.

No. 930135–CA.

Court of Appeals of Utah.

Sept. 2, 1994.

Rehearing Denied Nov. 7, and Dec. 12, 1994.

Larry R. Keller and Craig L. Boorman, Salt Lake City, for appellant.

Jan Graham, Carol Clawson, and Debra J. Moore, Salt Lake City, for appellees Utah Dept. of Public Safety and Colyar.

Allan L. Larson and Anne Swensen, Salt Lake City, for appellees Salem City Corp., Spanish Fork City Corp., Brad James, and Ed Asay.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Mary Day appeals the trial court's grant of summary judgment against her, arguing that Utah Code Ann. § 63–30–7(2) (Supp.1990) (repealed April 29, 1991) unconstitutionally deprives her of just compensation for her injuries and the death of her husband as a result of a high-speed police chase. We affirm.

## BACKGROUND

On March 18, 1991, at approximately 5:45 p.m., Trooper Ken Colyar of the Utah Highway Patrol had positioned himself on I–15 near Santaquin, Utah to monitor traffic. Trooper Colyar clocked, with a radar gun, a northbound black 1982 Buick at seventy-five miles per hour, ten miles per hour over the posted speed limit. Intending only to stop the vehicle and issue a citation for speeding, Trooper Colyar pulled onto I–15 and fell in behind the vehicle. The driver of the vehicle, sixteen-year old Steven Edward Floyd, increased his speed and exited I–15 at Santaquin.

For the next fifteen minutes Floyd led Colyar and at least two other law enforcement officers on a high speed chase—at one point reaching speeds approaching 120 miles per hour—through the rural communities of Spring Lake, Payson, Salem, and Spanish Fork. Floyd then entered I–15 again, heading north toward Provo, with Trooper Colyar close behind. Floyd took the University Avenue exit in Provo and ran the red light at the intersection of University Avenue and

East Bay Boulevard. In the process of running the red light, Floyd struck the vehicle operated by Boyd K. Day, killing him and injuring his wife, Mary, who was a passenger in the vehicle.

Mary Day subsequently filed suit against the State's Department of Public Safety, the Utah Highway Patrol, and Trooper Colyar. In addition, Mrs. Day's Complaint named two other law enforcement personnel involved in the high speed chase—Brad James and Ed Asay—as well as the cities that employed them—Salem and Spanish Fork. Mrs. Day alleged that the negligence of all defendants proximately caused the death of her husband as well as her injuries.

Plaintiff and all defendants filed motions for either partial or full summary judgment. Following a hearing, the trial court granted the State's and Cities' motions for summary judgment. The trial court subsequently entered two Orders, one dismissing Mrs. Day's Complaint with prejudice and the other granting summary judgment in favor of the defendants.

## ISSUES

On appeal, Mrs. Day urges this court to reverse the trial court's grant of summary judgment based on one or more of the following arguments: (1) the trial court erred by ruling that Mrs. Day's cause of action arose during the time that Utah Code Ann. § 63-30-7(2) (Supp.1990) (repealed April 29, 1991) was in effect; (2) the trial court erred by not ruling that section 63-30-7(2) violated (a) the open courts provision, (b) the due process clause, or (c) the equal protection clause, of the Utah Constitution; (3) the trial court erred by declaring defendants immune from suit under the discretionary function exception in section 63-30-10(1); and (4) the trial court erred by granting defendants' motions for summary judgment because there are genuine disputes of material facts.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when no genuine issue of material fact

exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). When evaluating a motion for summary judgment, "a court must consider all of the facts and evidence presented, and every reasonable inference arising therefrom, in a light most favorable to the party opposing the motion." *Katzenberger v. State*, 735 P.2d 405, 408 (Utah App.1987). Because summary judgment presents only questions of law, we accord no deference to the trial court's ruling. *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993).

## ANALYSIS

### Liability of Municipalities and Their Employees

■ Mrs. Day asserts as error on appeal the trial court's grant of summary judgment to the cities of Salem and Spanish Fork and their respective peace officers who were involved in the high speed chase. Our review of the record reveals an insufficiency of alleged facts to establish causation on the part of the cities or their employees, as a matter of law. For example, Floyd's unrebutted deposition testimony was that he simply went around the municipal officers' vehicles, did not see them again after passing them prior to the collision, and was attempting at all times during the pursuit to elude only Trooper Colyar. Accordingly, we affirm the trial court's grant of summary judgment as to the municipalities and their employees. *See Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985) (stating that when facts are undisputed and there is only one reasonable conclusion, issue of negligence is legal question).

### Liability of State Entities and Trooper Colyar

1. Origination of Cause of Action and Notice of Claim

■ As a prefatory argument to her constitutional argument, Mrs. Day asserts that Utah Code Ann. § 63-30-7(2) (Supp.1990) (repealed April 29, 1991) should not control her case.[1] She insists that her cause of

---

1. Mrs. Day would prefer to have her case adjudi- cated under Utah Code Ann. § 63-30-10(15)

action "arose" after the Legislature repealed section 63–30–7(2) because although she filed her Notice of Claim with the State before the section's repeal date, the State did not deny the Notice of Claim until after the section's repeal date.[2]

Mrs. Day's argument involves two fundamental questions: (1) When does a cause of action arise? and (2) Does the statutory requirement to file a Notice of Claim affect when a cause of action arises?

In *Aragon v. Clover Club Foods Co.*, 857 P.2d 250 (Utah App.1993), this court noted that "[l]imitation periods begin to run when a cause of action has accrued, which occurs 'upon the happening of the last event necessary to complete the cause of action.' " *Id.* at 252 (quoting *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983)); accord *Warren v. Provo City Corp.*, 838 P.2d 1125, 1128–29 (Utah 1992) ("Generally, a cause of action accrues and the relevant statute of limitations begins to run 'upon the happening of the last event necessary to complete the cause of action.' ") (quoting *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981)).

Utah courts have held that a cause of action for personal injury arises when the accident occurs. *Jepson v. State Dep't of Corrections,* 846 P.2d 485, 488 (Utah App.

(1993), which states:

> Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of:
> . . . .
> (15) the operation of an emergency vehicle, while being driven in accordance with the requirements of Section 41–6–14. . . .

Under this statute, Mrs. Day may have her day in court to try to establish that Trooper Colyar did not operate his vehicle in accordance with the requirements of § 41–6–14.

The State, in its supplemental brief, makes the argument that Mrs. Day never had a substitute remedy because § 63–30–7 (repealed), like § 63–30–10(15), retains immunity for the operation of emergency vehicles. The State has misread the statute. It continues to provide a remedy to Mrs. Day, and others like her, but she, and·they, must show that the emergency vehicle was not operated in accordance with § 41–6–14.

2. The following chronology of events is important in understanding Mrs. Day's argument:

1993); *see also Jackson v. Layton City,* 743 P.2d 1196, 1199 (Utah 1987) (Howe, J., concurring) (stating that cause of action for personal injury generally accrues when the accident occurs); *Fields v. Mountain States Tel. & Tel. Co.*, 754 P.2d 677, 678 (Utah App.1988) (noting that statute of limitations for personal injury began running on date of accident). The statutory requirement to file a Notice of Claim does not, in our view, change the time when a cause of action originates. As the Utah Supreme Court has noted, "[t]he notice of claim provisions of sections 63–30–11 and 63–30–13 operate as a one-year statute of limitations in cases brought against a governmental entity." *Warren,* 838 P.2d at 1128. Furthermore, the notice of claim statute itself arguably refers to a "claim" in a manner synonymous with "cause of action." The statute states that "[a] claim arises when the statute of limitations that would apply if the claim were against a private person begins to run." Utah Code Ann. § 63–30–11(1) (1989). If Mrs. Day were to bring suit against private defendants, the statute of limitations would begin to run on the date that she was injured. Thus, the notice of claim is a mechanism similar to a statute of limitations designed to eliminate stale claims against the State.[3] As such, it limits the time period during which an individual may initiate suit

| February 27, 1991 | — | Utah Legislature repeals § 63–30–7(2) |
| March 14, 1991 | — | Governor signs bill repealing § 63–30–7(2) |
| March 18, 1991 | — | High speed chase in which Boyd Day is killed and Mary Day is injured |
| March 22, 1991 | — | Mrs. Day files Notice of Claim with State of Utah |
| April 29, 1991 | — | Repeal of § 63–30–7(2) takes effect |
| June 21, 1991 | — | Notice of Claim deemed denied |

3. In an earlier case, the Utah Supreme Court articulated the rationale behind the notice-of-claim requirement:

> Among other reasons, notice of claim provides the governmental unit with an opportunity to promptly investigate and to remedy any defect immediately, before additional injury is caused; it helps avoid unnecessary litigation; it minimizes difficulties that might arise from changes in administrations.

*Sears v. Southworth,* 563 P.2d 192, 193 (Utah 1977).

against the State. It does not, however, determine when a cause of action against the State arises; rather, that is determined when the last event necessary to give rise to the cause of action occurs. Accordingly, in this case, Mrs. Day's cause of action arose on the date of her accident, March 18, 1991, during the period in which section 63–30–7(2) was still viable. Consequently, that now-repealed provision applies to and controls Mrs. Day's case.

## 2. Resolution of Issues on Nonconstitutional Grounds

 Utah courts recognize the "fundamental rule that [they] should avoid addressing constitutional issues unless required to do so." *State v. Anderson*, 701 P.2d 1099, 1103 (Utah 1985); *accord State v. Starnes*, 841 P.2d 712, 714 n. 2 (Utah App.1992). Accordingly, before reaching Mrs. Day's constitutional arguments, we must determine whether we can resolve the issues before us on nonconstitutional grounds. There are two such possible grounds in this case. First, Mrs. Day's cause of action cannot survive if Trooper Colyar owed no duty of care to her and her husband at the time of the collision. Second, in order to claim a violation of article 1, section 11 of the Utah Constitution, Mrs. Day must first establish that there existed at common law a right which the Legislature totally abrogated by enacting section 63–30–7(2).

### a. Duty of Care

 The State correctly points out that Mrs. Day's cause of action cannot lie, regardless of the outcome of the governmental im-

munity question, if Trooper Colyar owed no duty of care to Mrs. Day and her husband at the time of the collision. In essence, the State argues that Trooper Colyar's duty of care, whatever it may have been, did not extend so far as to include the Days. The State's third-party-due-care argument is premised on the fact that it was Mr. Floyd's vehicle, not Trooper Colyar's, that collided with the Day vehicle.

The Motor Vehicle Code in effect at the time of the accident states that operators of authorized emergency vehicles, when in the pursuit of an actual or suspected violator of the law, may disregard posted speed limits and other traffic laws if the operator of the vehicle both sounds an audible signal and uses a visual signal. Utah Code Ann. § 41–6–14 (1988).[4] Furthermore, section 41–6–14(3)(a), also in effect at the time of the accident, states that "[t]he privilege[ ] [of disregarding traffic laws] do[es] not relieve the operator of an authorized emergency vehicle from *the duty to operate the vehicle with regard for the safety of all persons*."[5] *Id.* § 41–6–14(3)(a) (repealed effective July 1, 1993) (emphasis added); *see also Howe v. Jackson*, 18 Utah 2d 269, 421 P.2d 159 (1966) (noting that ambulance driver is required to use reasonable care).

We believe that the clear language of the statute imposes on a highway patrol trooper who is pursuing a suspected violator of the law a duty of due care toward those members of the public who are using the highway during the high-speed chase and whose vehicles come within a reasonable proximity to the speeding vehicles.[6] Accordingly, we hold

---

4. The Legislature amended § 41–6–14 in 1993 and added a requirement that public agencies employing law enforcement personnel must adopt a written policy regarding vehicle pursuits.

5. In addition, § 41–6–76 of the Motor Vehicle Code states that although all other motor vehicle operators have an obligation to yield the right-of-way to an emergency vehicle operating under the guidelines of § 41–6–14, "the operator of an authorized emergency vehicle [is not relieved] from *the duty to drive with regard for the safety of all persons using the highway*." *Id.* § 41–6–76(2) (1993) (emphasis added).

6. Our concurring colleague asserts that the public duty doctrine imposes only a general, rather

than a specific, duty on the pursuing police officer, which is not actionable under a negligence theory. Consequently, argues the concurrence, Mrs. Day did not prove a prima facie case of negligence, thereby negating the need to reach the governmental immunity question. *See Ferree v. State*, 784 P.2d 149, 152–53 (Utah 1989) (stating that when defendants owed no duty of care toward injured victim, court need not reach questions raised by doctrine of sovereign immunity); *see also Ledfors v. Emery County Sch. Dist.*, 849 P.2d 1162, 1164 (Utah 1993) (noting that in more recent cases supreme court has tended to address traditional tort questions first for sake of analytical clarity); *Rollins v. Petersen*, 813 P.2d 1156, 1162 n. 3 (Utah 1991) (noting that courts must "first consider whether there is a legal

that Trooper Colyar owed a duty of care to Mrs. Day and her husband at the time of the accident.[7] Hence, we cannot resolve the case on this nonconstitutional ground.

theory upon which suit can be brought ... before considering the separate and independent question of whether [defendant] is immune").

The concurrence cites several cases in support of its position that we believe are distinguishable and inapplicable to the instant case. All of the cited cases involve situations where a public agency or its employees allegedly failed to take some affirmative action that resulted in injury to an individual and/or the injury occurred at both a time and place remote from the alleged negligent act of the public employee. *See Ferree*, 784 P.2d at 150–51 (prisoner on weekend release killed man by bludgeoning him to death with pipe); *Rollins*, 813 P.2d at 1158–59 (state mental hospital patient escaped, stole car, and ultimately killed individual in collision); *Lamarr v. UDOT*, 828 P.2d 535, 536–37 (Utah App.1992) (pedestrian seriously injured by automobile on overpass which UDOT had allegedly failed to properly construct, maintain, and place signs on); *Cannon v. University of Utah*, 866 P.2d 586, 587–88 (Utah App.1993) (pedestrians who were en route to basketball game and were struck in crosswalk by automobile sued university police officers who had been stationed at crosswalk but failed to exit their vehicle because of inclement weather), *cert. denied*, 879 P.2d 266 (Utah 1994).

We believe these cases would apply to the instant case had Trooper Colyar decided not to pursue the speeding Floyd vehicle. In such a case, Mrs. Day could not argue that Trooper Colyar's decision to ignore the speeding Floyd vehicle was a breach of a specific duty which Trooper Colyar owed specifically to Mrs. Day, thereby subjecting the officer to a claim of negligence. The public duty doctrine clearly insulates Trooper Colyar under this scenario.

However, once Trooper Colyar decided to exercise his discretionary function by pursuing the Floyd vehicle, the law imposed on Trooper Colyar a specific duty to operate his vehicle with due care for the safety of others on the road. *See* Utah Code Ann. § 41–6–14(3)(a) (1988) ("The privileges under this section do not relieve the operator of an authorized emergency vehicle from the duty to operate the vehicle with regard for the safety of all persons, or protect the operator from the consequences of an arbitrary exercise of the privileges."); *id.* § 41–6–76 ("This section does not relieve the operator of an authorized emergency vehicle from the duty to drive with regard for the safety of all persons using the highway."); *Cornwall v. Larsen*, 571 P.2d 925, 928 (Utah 1977) (Ellett, C.J., concurring) ("The driver of a police car [operating under § 41–6–14], thus, *is* liable in a civil action for a failure to drive with due regard for the safety of others."); *Howe v. Jackson*, 18 Utah 2d 269, 421 P.2d 159,

### b. Ministerial v. Discretionary Function

■ To prevail on her open courts argument, Mrs. Day must establish that she had a common law right that has been abrogated.[8] In that vein, she claims a common law

161–62 (1966) (ambulance driver operating under exemption of § 41–6–14 "was nevertheless not excused from using reasonable care under the circumstances, and ... any careless, arbitrary or unreasonable exercise of those privileges would be negligence"); *Jensen v. Taylor*, 2 Utah 2d 196, 202, 271 P.2d 838, 841–42 (1954) (case involving collision between fire truck and another vehicle was properly submitted to jury—on questions of negligence, contributory negligence, and proximate cause—for determination of whether fire truck driver speeding to scene of fire properly exercised privilege under § 41–6–14); *see also Malan v. Lewis*, 693 P.2d 661, 673 (Utah 1984) ("A driver owes a duty of due care to all other persons on the highway."). In short, we do not believe that the duty of due care imposed on all drivers on the highway is ignored simply because the driver of the vehicle happens to be a law enforcement officer. Therefore, Trooper Coylar owed a specific duty to operators of other vehicles in the vicinity of the high-speed chase. We hasten to add, however, that Mrs. Day would still be required to establish breach of duty and proximate cause which in this case appears difficult.

Furthermore, although we have addressed the question of duty, we could have assumed the "less clearcut question of duty" and proceeded directly to the dispositive issue of governmental immunity. *Smith v. Weber County Sch. Dist.*, 877 P.2d 1276, 1278 (Utah App.1994); *accord Petersen v. Board of Educ.*, 855 P.2d 241, 243 (Utah 1993) (per curiam); *see also Ledfors v. Emery County Sch. Dist.*, 849 P.2d 1162, 1164 (Utah 1993) (noting that supreme court has at times performed immunity analysis first, "typically when it ended the inquiry").

7. The trial court stated in its summary judgment minute entry that Trooper Colyar operated his vehicle in conformity with Utah Code Ann. § 41–6–14 (1993). The determination of this issue, as well as the issue of whether Trooper Colyar breached the duty he owed to members of the public on the highway, is for the finder of fact. As a summary judgment ruling involves only a question of law, the trial court should not have ruled on the factual questions. However, because of our resolution of the constitutional issues raised by Mrs. Day we need not remand on the breach of duty issue.

8. *See Berry ex rel. Berry v. Beech Aircraft*, 717 P.2d 670, 675–77 (Utah 1985) (indicating that legislature's elimination of existing cause of action without providing reasonable substitute, absent required justification, violates open courts provision of Utah Constitution).

right to sue governmental employees for their negligent performance of ministerial acts.[9]

In determining this issue we look primarily at remedies existing at or near the time the Utah Constitution was adopted. As observed in *Berry ex rel. Berry v. Beech Aircraft,* 717 P.2d 670, 676 n. 3 (Utah 1985), "the common law at the time of statehood provides at least a measure of the kinds of legal rights that the framers must have had in mind for the protection of life, property, and reputation." *Accord Lee v. Gaufin,* 867 P.2d 572, 592 (Utah 1993) (Zimmerman, J., concurring). Because Trooper Colyar was an employee of the Utah Highway Patrol, a state agency, we examine specifically whether there was a common law tort cause of action against state employees. The State asserts that state employees were immune from suit under a governmental/proprietary standard, while Mrs. Day insists that state employees were personally liable for negligent performance of ministerial duties.

The British doctrine of sovereign or governmental immunity was incorporated into the American common law with regard to both the federal and state governments. Restatement (Second) of Torts § 895 (1965). Therefore, "neither the state nor the federal government is liable for torts committed in its service by its officers and employees unless it consents to such liability." Fleming James, Jr., *Tort Liability of Governmental Units and Their Officers,* 22 U.Chi.L.Rev. 610, 610 (1955).[10] Sovereign immunity was first grounded on the notion that the King could do no wrong. As a result, early British common law immunized the King's officers

from liability when carrying out his commands. Restatement (Second) of Torts § 895D (1965). Parliamentary ministers, however, were not immune when they acted illegally. *Id.* Commentators, however, agree that individual immunity for American governmental officials did not exist under the early common law.

> The Anglo–American tradition did not include a general theory of immunity from suit or from liability on the part of public officers. It was the boast of Dicey often quoted, that "[w]ith us every official, from the Prime Minister down to a constable or a collector of taxes, is under the same responsibility for every act done without legal justification as any other citizen."

Fleming, 22 U.Chi.L.Rev. at 635 (quoting Dicey, *Law of the Constitution* 193 (9th ed. 1939); *accord* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 132, at 1059 (5th ed. 1984).

A compromise doctrine subsequently developed at common law, whereby government officers could be held liable for the negligent performance of ministerial functions, but not for discretionary functions. Restatement (Second) of Torts § 895D (1965); Keeton et al. § 132, at 1059.[11] Immunity from liability for discretionary acts developed as an extension of the immunity afforded judicial officers to similarly shield legislative and administrative officials. Under this concept,

> [w]herever suit is brought against an individual officer because of his official conduct, the court must consider the practical effects of liability and make a value judgment between the social and individual benefit from compensation to the victim,

---

**9.** Mrs. Day's argument, simply stated, is that this common law right was abrogated when the Legislature (1) waived immunity of the State as an entity in the Utah Governmental Immunity Act, (2) precluded suit against Officer Colyar personally pursuant to Utah Code Ann. § 63–30–4(3) (1993), and then (3) denied the right to sue governmental entities for damages resulting from police pursuit, leaving her with no substitute remedy, in violation of the open courts provision.

**10.** Governmental immunity also applies to municipalities and counties as creations of the state. However, the common law characterized municipal functions as either governmental or proprietary. Immunity attached to governmental acts

but not to proprietary functions. This distinction was also incorporated into some state governmental immunity statutes but has since been rejected under many more recent versions.

**11.** Some cases have equated discretionary acts with those that are governmental or official, thus obfuscating the possible differences among those theories. In addition, few statutes waiving governmental immunity address the question of whether discretionary has the same meaning for both governmental entity and officer immunity questions. George A. Bermann, *Integrating Governmental and Officer Tort Liability,* 77 Colum.L.Rev. 1175, 1181–82 (1977).

together with the wholesome deterrence of official excess on one hand; and on the other, the evils that would flow from inhibiting courageous and independent official action, and deterring responsible citizens from entering public life.

Fleming, 22 U.Chi.L.Rev. at 643.

Utah's common law was similar to that throughout the United States; namely, state employees could be held liable for their negligent performance of ministerial duties. In *Madsen v. Borthick*, 658 P.2d 627 (Utah 1983), depositors in a finance company sued Utah's Commissioner of the Department of Financial Institutions. In analyzing whether the Commissioner could be held personally liable, the Supreme Court noted that at common law " 'a governmental agent performing a *discretionary* function [was] immune from suit for injury arising therefrom, whereas an employee acting in a *ministerial* capacity, even though his acts may [have] involve[d] some decision making, [were] not so protected.' " *Id.* at 632 (quoting *Frank v. State*, 613 P.2d 517, 520 (Utah 1980) (emphasis added); *see also Payne ex rel. Payne v. Myers*, 743 P.2d 186, 188 (Utah 1987) (noting that state-employed "doctors[,] as governmental employees[,] had no immunity from suit for their simple negligence" absent statutory grant of immunity); *Hjorth v. Whittenburg*, 121 Utah 324, 328–29, 241 P.2d 907, 909 (1952) (general rule is state or municipal employees may be liable for ministerial but not for discretionary acts).[12]

Generally speaking, discretionary functions are those involving policy setting and decision making, while ministerial acts are more operational, involving the carrying out of policies. However, it is not possible to precisely define the differences between discretionary and ministerial acts of government officers at common law, largely because the distinction stems from a court's view of what constitutes sound public policy. Keeton et al. § 132, at 1062, 1065. The difference, therefore, is largely one of degree. *See* Restatement (Second) of Torts § 895D (1965). "Attempts to solve the problem by setting forth a precise definition of the term, discretionary function, have been less than helpful. The expression is not only a standard; it is also a legal conclusion whose purport is only somewhat incidentally related to the definitions of the two words." *Id.* A flexible approach is appropriate given that immunity doctrines are "grounded in values and perceptions of the times, and with the change in values and perceptions, the immunity itself is likely to undergo change as well." Keeton et al. § 131, at 1032.

Consistent with the foregoing, the categorization of a police officer's duties as discretionary or ministerial has evolved over time. While "much police work is highly discretionary, the courts over a long period have classified police action as ministerial; that means a policy [sic] officer generally has only qualified immunity, not absolute immunity, even when what he does is clearly discretionary." Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 19.3, at 21 (3d ed. 1994). Thus, police officers were not immune for torts committed while effecting arrests. George A. Bermann, *Integrating Governmental and Officer Tort Liability*, 77 Colum.L.Rev. 1175, 1183–84 (1977) (citing *Carter v. Carlson*, 447 F.2d 358 (D.C.Cir. 1971), rev'd on other grounds sub nom. *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973)).

In the instant case, the parties have not cited any Utah caselaw from near the time of statehood which addresses immunity for police officers, and we have not found any.[13] More obviously, there is no case law at that

---

**12.** The State argues that state officers were immune at common law because the governmental/proprietary distinction applied only to municipalities. That argument appears to be irrelevant as it is the discretionary/ministerial distinction that is applicable and we have found no authority for the proposition that this distinction is not germane to state employees at common law and much to the contrary.

**13.** A 1977 Utah Supreme Court case stated in dicta that a police officer whose car collided with another car while the officer was responding to an emergency situation was "an employee, performing a ministerial act and not a discretionary act." *Cornwall v. Larsen*, 571 P.2d 925, 927 (Utah 1977). There was, however, no substantive analysis accompanying the statement or specifying whether the court relied on common law or statutory authority.

time addressing liability for damages resulting from law enforcement's hot pursuit of a fleeing suspect. Certainly the likelihood of harm at the turn of the century to an innocent bystander was considerably less from pursuit by horseback as compared to high speed automobiles on congested streets and highways.

Some early Utah cases do, however, address the discretionary/ministerial dichotomy either explicitly or by implication. In *Hjorth*, the court held that members of the Utah State Road Commission had no personal liability for their decisions in designing highways where they had acted in good faith, because their duties were an exercise of discretion. *Hjorth*, 241 P.2d at 909.

Closer to the date of Utah's statehood, the supreme court extended governmental immunity to a state deputy sheep director in *Garff v. Smith*, 31 Utah 102, 86 P. 772 (1906). This official's duties included inspecting sheep, placing infected ones in quarantine, and imposing certain conditions as part of the quarantine. In *Garff*, the plaintiff alleged the official had acted negligently in imposing conditions of quarantine that were unsafe and resulted in the deaths of plaintiff's sheep. The court noted that a ministerial duty " 'is absolute, certain, and imperative, involving merely the execution of a set task and when the law which imposes it prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion.' " *Id.* 86 P. at 774 (quoting *People v. Bartels*, 138 Ill. 322, 27 N.E. 1091 (1891)). A ministerial act leaves no room for the employee to use his or her judgment as to the propriety of the act. *Id.* The court then held that the sheep inspector's duties were not so precisely defined as to exclude the exercise of his judgment or discretion. He was free to define the conditions of quarantine depending on the particular facts and circumstances presented. Because "[t]he law does not prescribe the mode of doing the act with such certainty that one person can do it as well as another by merely following that which is pointed out by the statute," the inspector's acts were discretionary and he could not be held liable for them. *Id.*

We believe *Garff* is controlling and necessitates our conclusion that a cause of action would not lie at common law against Trooper Colyar. Although there were specific printed policies and procedures in place addressing police pursuits, which dictated, to a certain extent, Trooper Colyar's actions, he still had to exercise his own judgment and discretion in deciding whether to pursue the suspect, in what manner, and for how long. These decisions are of equal weight to those of the assistant sheep inspector in deciding conditions of quarantine. Moreover, this result is consistent with the later Utah case of *Sheffield v. Turner*, 21 Utah 2d 314, 445 P.2d 367 (1968), in which a prison warden was afforded immunity from liability so long as he was acting in good faith and carrying out the duties of his office. The court also noted the public policy promoted by such immunity—it provides prison officials with the necessary freedom to discharge their duties. This policy is similar to that noted in more modern cases postdating statutes waiving governmental immunity, which have nonetheless shielded police officers from liability arising from pursuits—to encourage vigorous law enforcement efforts. *See Tice v. Cramer*, 133 N.J. 347, 627 A.2d 1090, 1108 (1993); *accord Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655, 664 (1983).

Our determination of common law remedies existing at or near the time of statehood is simply our best assessment of what a court during that era would have ruled if the issue had arisen. As a corollary, our holding is limited to the common law in Utah at the beginning of the twentieth century and does not address whether Trooper Colyar's actions were discretionary or ministerial under any version of Utah's Governmental Immunity Act or cases decided thereunder. *See, e.g., Little v. State Div. of Family Servs.*, 667 P.2d 49 (Utah 1983); *Frank v. State*, 613 P.2d 517 (Utah 1980).

3. Open Courts Provision and Section 63–30–7(3)

■ Mrs. Day asserts on appeal that Utah Code Ann. § 63–30–7(2)(a) (Supp.1990) (repealed April 29, 1991), violates the open courts provision of article I, section 11 of

Utah's Constitution because it precludes her from bringing suit against Trooper Colyar's employer, the State of Utah, for his negligent acts while performing a ministerial function.

Section 63–30–7(2)(a) states:

All governmental entities employing peace officers retain and do not waive immunity from liability for civil damages for personal injury or death or for damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he is being or has been pursued by a peace officer employed by the governmental entity in a motor vehicle.

*Id.* Thus, this statute provides governmental immunity to governmental employers of peace officers involved in high speed chases when the vehicle being chased collides with and injures another vehicle and its occupants. Mrs. Day concedes that section 63–30–7(2)(a), if it passes constitutional muster, bars her suit against the state entities named in this case. Furthermore, section 63–30–4 precludes Mrs. Day from bringing suit against Trooper Colyar and the other officers personally.[14] Utah Code Ann. § 63–30–4 (1993). Accordingly, the combination of sections 63–30–7(2)(a) and 63–30–4 effectively preclude Mrs. Day's case in its entirety. However, as we have previously held in this opinion, Mrs. Day is now in the same position she would have been prior to 1966 when Utah enacted the Governmental Immunity Act. Under Utah common law, Mrs. Day had no redress against either the State or its employees for negligent acts during a high speed police chase. In other words, the common law doctrine of governmental immunity as it had developed to the time of Utah's statehood, precluded a cause of action.

As recognized by the Utah Supreme Court, the common law doctrine of sovereign immunity does not offend Utah's open courts provision. *Madsen v. Borthick,* 658 P.2d 627, 629 (Utah 1983); *see also McCorvey v. UDOT,* 868 P.2d 41, 49 (Utah 1993) (Stewart, J., concurring and dissenting) ("[T]he right to sue the state when it performs a governmental function, as constitutionally defined, does not implicate a right protected by the open courts provision of Article I, section 11."). "Sovereign immunity ... was a well-settled principle of American common law at the time Utah became a state." *Madsen,* 658 P.2d at 629. The open courts provision of Utah's constitution "was not meant to create a new remedy or a new right of action." *Id.*

4. Equal Protection and Due Process.

■ Mrs. Day also argues that former section 63–30–7(2) is unconstitutional as a violation of both the equal protection provisions of article I, section 24 of the Utah Constitution and the due process provisions of article I, section 7 of the Utah Constitution.

■ We apply a rational basis test in assessing Mrs. Day's remaining constitutional arguments, having already determined that the open courts provision has not been violated. *See Condemarin v. University Hosp.,* 775 P.2d 348 (Utah 1989); *Wright v. University of Utah,* 876 P.2d 380, 389 (Utah App.1994). Further, because no fundamental right or suspect class is asserted, only a rational basis test is necessary for an equal protection analysis. *Greenwood v. City of N. Salt Lake,* 817 P.2d 816, 820–21 (Utah 1991). " 'A presumption of constitutionality is extended to statutes ... and that presumption is sufficient to sustain the constitutionality of a classification created by the statute unless the classification creates an invidious discrimination, or bears no rational relationship to a legitimate state purpose.' " *Lee v. Gaufin,* 867 P.2d 572, 580 (Utah 1993) (quoting *J.J.N.P. Co. v. State,* 655 P.2d 1133, 1138 (Utah 1982)).

We believe the statute easily meets the rational basis test. Barring suits against the government and its officers for damages resulting from high speed police chases of suspects is intended to encourage the pursuit and apprehension of lawbreakers. Many cases upholding similar statutes have cited this rationale as a legitimate basis for vali-

---

14. Actually, § 63–30–4 would allow a suit against Trooper Colyar and the other officers if they had acted, or failed to act, fraudulently or maliciously. *See* Utah Code Ann. § 63–30– 4(3)(b) (1993). As Mrs. Day has not alleged that Trooper Colyar acted with fraud or malice, she cannot sue him personally.

dating the provisions. *See, e.g., Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn.1992) (noting such immunity encourages responsible law enforcement). While the immunity granted by the statute may appear unduly harsh, it is the Legislature's function to fashion exceptions to governmental immunity. *See Malcolm v. State*, 878 P.2d 1144, 1146 (Utah 1994) (holding state entities immune from liability for damages caused by parolee).

## CONCLUSION

We affirm the trial court's summary judgment in favor of the municipal defendants. We hold that Mrs. Day's cause of action arose at the time of the accident and not after the state rejected her Notice of Claim. Furthermore, we hold that section 63–30–7(2)(a) does not violate the open courts, due process, or equal protection provisions of Utah's Constitution. Accordingly, as to the state defendants, we also affirm the summary judgment in their favor.

BILLINGS, J., concurs.

BENCH, Judge (concurring in the result):

I would affirm the summary judgment but, rather than reaching the governmental immunity issues, I would simply hold that plaintiff has not established that the defendants owed her a duty of care. *See Ferree v. State*, 784 P.2d 149, 152–53 (Utah 1989) ("Having decided that the defendants owed no duty of care toward the victim, we need not reach the questions raised by the doctrine of sovereign immunity.... Sovereign immunity ... is an affirmative defense and conceptionally arises subsequent to the question of whether there is tort liability in the first instance."); *cf. Smith v. Weber County Sch. Dist.*, 877 P.2d 1276, 1278 (Utah App.1994) (stating that

court may generally reach governmental immunity issue first only when it is clear and dispositive). In the present case, it is the duty issue that is "clearcut," and not the governmental immunity issues.

An "essential element of a negligence claim" is establishing that the defendant owed the plaintiff a duty of care. *Lamarr v. Utah State Dep't of Transp.*, 828 P.2d 535, 537 (Utah App.1992) (quoting *Owens v. Garfield*, 784 P.2d 1187, 1189 (Utah 1989)). The duty identified in the main opinion under Utah Code Ann. § 41–6–14 (1988) is a duty owed to the public generally. A negligence claim, however, may not be based upon a public duty. *Id.* at 539 ("a duty to all is a duty to none"). To successfully claim negligence against a state entity, plaintiff must show that defendants owed her a "special duty" beyond that already owed to the general public. *Cannon v. University of Utah*, 866 P.2d 586, 588–89 (Utah App.1993) ("when the government deals generally with the welfare of all, it does so without a duty to anyone, unless there is a 'special relationship' between the government and the individual"), *cert. denied*, 879 P.2d 266 (Utah 1994); *see also Ferree*, 784 P.2d at 151 ("plaintiff must show a breach of a duty owed him as an individual, not merely the breach of an obligation owed to the general public at large by the governmental official"). In the present case, plaintiff makes no claim of a special duty owed to her or her husband at the time of the accident.[1]

I would therefore affirm the summary judgment on the ground that defendants had no duty of care to this particular plaintiff.

---

1. The main opinion misinterprets the special-duty requirement, stating that the "clear language" of § 41–6–14 imposes upon officers a special duty of care to all members of the public "whose vehicles come within a reasonable proximity to the speeding vehicles." I disagree, and believe that the plain language of the statute creates only a general duty to the public. If there is to be a special duty, it is for the legislature to so provide.

The main opinion also attempts to minimize the special-duty requirement by distinguishing controlling case law and by pointing to the offi-

cer's affirmative action toward someone who is not even a party to the lawsuit. I do not believe that the officer's action in response to a fleeing suspect, ipso facto, creates a "special duty" to plaintiff, as that term is defined by our case law. I believe it is unreasonable in the present case to hold the officer responsible for the accident between the fleeing suspect and the plaintiff, a third party. It is even more unreasonable to suggest that, unless sovereign immunity applies, the governmental entity is liable as an insurer for the willful, wanton, or reckless conduct of fleeing suspects or violators of the law.